UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**11 CIV. 4460**

-------------------------------------------------------------------x

INEZ CAIN a.k.a. EVE HALLIBURTON,

          Plaintiff,

    -against-

SIMON & SCHUSTER, INC., POCKET BOOKS,
LOUISE BURKE an individual, KAREN HUNTER
PUBLISHING, INC., KAREN HUNTER an individual,
CHARLES SUITT an individual, SUITT-HUNTER
ENTERPRISES, LLC

-------------------------------------------------------------------x

**DEMAND FOR JURY TRIAL**

**COMPLAINT**



## INTRODUCTION

This case involves racial discrimination by Simon & Schuster, Inc., Pocket Books (a division of Simon & Schuster, Inc.), Louise Burke, Karen Hunter, Karen Hunter Publishing, Inc., Charles Suitt, Suitt-Hunter Enterprises, LLC (d.b.a. Karen Hunter Publishing, Inc.) against Inez Cain an African American author who writes under the nom de plume Eve Halliburton.

Defendants' agent Karen Hunter told Ms. Cain that *"Simon & Schuster did not create their publishing company for black people."*

Plaintiff Inez Cain seeks to remedy this shameful discriminatory behavior with this civil rights action. Such invidious racist behavior must be stopped. Ms. Cain seeks injunctive relief, compensatory, monetary, punitive damages and attorneys' fees for Defendants blatant violations of her rights under federal, state and city law.

## JURISDICTION AND VENUE

1. This action is to remedy intentional racial discrimination as prohibited under constitution and laws of the United States Constitution pursuant to 42 U.S.C. §1981 and the New York State Civil Rights Law §40-c.

1

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, §1332, §1343, §2201, §2202 and 15 U.S.C. §1121(a). Jurisdiction over state claims is further invoked pursuant to 28 U.S.C. §1367 and the Court's pendent jurisdiction. The matter in controversy exceeds $75,000.00.

3. Venue is founded in the Southern District of New York pursuant to 28 U.S.C. §1391(b) because the discriminatory actions of the Defendants took place in this district.

## JURY DEMAND

4. Plaintiff demands trial by jury in this action.

## PARTIES

5. Plaintiff Inez Cain (hereinafter referred to "Ms. Cain") is a female African-American citizen of the United States. Using the nom de plume Eve Halliburton, Ms. Cain is the author of one novel, The Diary of a Mad Legal Secretary which is the subject of her claim. At all relevant times herein, Ms. Cain has lived in the State of New Jersey.

6. Upon information and belief, and at all times relevant herein, Defendant Simon & Schuster, Inc. is and has been a publisher of works of fiction and nonfiction in hardcover, trade and paperback formats.

7. Upon information and belief Simon & Schuster, Inc. is and has at all relevant times been a corporation of the state of Delaware that is registered to do business in the State of New York, and whose principal place of business is 1230 Avenue of the Americas, 11th Floor New York, New York 10020.

8. Upon information and belief and at all times relevant herein, Defendant Pocket Books has been and is an imprint and/or division of Simon & Schuster, Inc.

9. Louise Burke is an individual and is an employee of Simon & Schuster, Inc. and functioned as an agent of Simon & Schuster, Inc.

2

10.     Upon information and belief Karen Hunter Publishing, Inc. is and has at all relevant times been a corporation of the state of New Jersey that is registered to do business in the State of New Jersey and New York and whose principal place(s) of business is 598 Broadway, 3rd Floor New York, New York and 23 Wheatland Avenue West Orange, New Jersey 07052.

11.     Upon information and belief Karen Hunter Publishing, Inc. is an imprint of Pocket Books and Simon & Schuster, Inc.

12.     Upon information and belief Karen Hunter is an individual and functioned as the Publisher of Karen Hunter Publishing, Inc. and as employee and/or agent of Pocket Books and Simon & Schuster, Inc.

13.     Upon information and belief Suitt-Hunter Enterprises LLC is a corporation of the state of New Jersey that is registered to do business in the state(s) of New Jersey and New York and whose principal place(s) of business is 598 Broadway, 3rd Floor New York, New York and 23 Wheatland Avenue West Orange, New Jersey 07052 and Suitt-Hunter Enterprises LLC does business as Karen Hunter Publishing, Inc.

14.     Upon information and belief Charles Suitt is an individual and functioned as an employee and/or agent of Suitt-Hunter Enterprises LLC, Karen Hunter Publishing, Inc., Pocket Books and Simon & Schuster, Inc.

15.     Upon information and belief at all times relevant hereto, Defendants have acted in concert and with knowledge, approval and awareness of each other's actions with respect to the refusal to allow Ms. Cain the same opportunities and advantages afforded to a white author.

## THE BASIC FACTS

16.     On or around December of 2006, Ms. Cain self-published her first novel entitled *The Diary of a Mad Legal Secretary* under the nom de plume Eve Halliburton. This work of fiction is

about a legal secretary who is dysfunctional and has homicidal thoughts regarding her boss and happens to work at a New York City law firm around a group of dysfunctional lawyers and support staff.

17. On or around March 2, 2008, Ms. Cain received an email from Defendants' agent Karen Hunter acknowledging that she received Ms. Cain's book and offering Ms. Cain publishing options including a book tour.

18. Between March 3, 2008 and April 2, 2008, Roget Romaine had telephone conversations with Defendants' agent Karen Hunter regarding meeting with Ms. Cain.

19. On or around April 8, 2008 Defendants' agent Karen Hunter meets with Ms. Cain at the offices of Henry Hewes a former Presidential Candidate of the United States. In this meeting Defendants' agent Karen Hunter offered to Ms. Cain a fifty thousand dollar ($50,000.00) book advance because she was a first time author. Defendants' agent Karen Hunter said that she would have to confirm this amount with people at Simon & Schuster, Inc. Defendants' agent Karen Hunter discusses publishing deal and tentative book release date(s) with Ms. Cain. Defendants' agent Karen Hunter first told Ms. Cain that the book release date would be September of 2008 but later decided that Secretary's Day of 2009 would be the release date, because the publishing company was working on another project and that Secretary's Day 2009 would be the date.

20. On or around April 9, 2008 Ms. Cain received an email from Defendants' agent Karen Hunter saying that it was a pleasure meeting with Ms. Cain.

21. On or around April 12, 2008 Ms. Cain received an email from Defendants' agent Karen Hunter making suggestions regarding the editing of Ms. Cain's book, as well as the art direction for the book. This email from Defendants' agent Karen Hunter to Ms. Cain also contained wording "when we publish."

22. On or around April 14, 2008 Ms. Cain responded to Defendants' agent Karen Hunter's email (April 12, 2008) and via email told Defendants' agent Karen Hunter that she was in agreement with her suggestions.

23. On or around April 14, 2008 Ms. Cain received another email from Defendants' agent Karen Hunter stating that she was going out of town until the 28th of April. Defendants' agent Karen Hunter asked that Ms. Cain send her the book in Microsoft Word format so that she could start editing the book.

24. Between April 29, 2008 and May 1, 2008 there were numerous telephone conversations between Defendants' agent Karen Hunter, Roget Romaine and I. During this time Defendants' agent Karen Hunter starts talking about Simon & Schuster were having financial problems and that Simon & Schuster did not want to pay Ms. Cain a fifty thousand dollar advance ($50,000.00); instead they wanted to pay Ms. Cain ten thousand dollars ($10,000.00) and would probably have to do just an Ebook deal first and Defendants' agent Karen Hunter told Ms. Cain that she would have to talk to some people at Simon & Schuster.

25. On or around May 6, 2008 Defendants' agent Karen Hunter told Ms. Cain that Simon & Schuster agreed to give her a FIFTY THOUSAND DOLLAR ($50,000.00) advance. As per Defendants's agent Karen Hunter, Simon & Schuster's Business Affairs department was preparing the agreement and as per the Defendants' agent Karen Hunter, it would take Simon & Schuster's Business Affairs department approximately three to four weeks to complete the agreement.

26. On or around May 31, 2008 Ms. Cain began to inquire regarding the status of the contract (like where is it?).

27. On or around May 31, 2008 Ms. Cain received an email from Roget Romaine stating that he reached out to Defendants' agent Karen Hunter several times and no return telephone call.

5

28. On or around June 6, 2008, Ms. Cain was able to reach Defendant's agent Karen Hunter via telephone and Defendants' agent Karen Hunter stated to Ms. Cain that the Business Affairs department at Simon & Schuster was stilling working on the contract. Defendants' agent Karen Hunter told me to tell Roget Romaine that to call her and that she would tell him that the Business Affairs department at Simon & Schuster was still working on the contract.

29. On June 8, 2008 Ms. Cain sent Defendants' agent Karen Hunter an email stating that she gave Roget Romaine the message to call her and that he has been unable to reach her. Ms. Cain asked Defendants' agent if everything was okay.

30. Between June 10, 2008 to June 13, 2008, Ms. Cain and Roget Romaine were unable to reach Defendants' agent Karen Hunter.

31. On or around June 16, 2008 at approximately between the hours of 10:00 a.m. and noon, Ms. Cain was able to reach Defendants' agent Karen Hunter via telephone. Ms. Cain inquired about the contract and during this telephone conversation; Defendants' agent Karen Hunter asked Ms. Cain if she trusted Roget Romaine. Ms. Cain asked Defendants' agent what did her question have to do with the contract and where was the contract? Defendants' agent Karen Hunter told Ms. Cain that she wanted to put her book with a network for African American writers only. Ms. Cain told Defendants' agent Karen Hunter that it was agreed previously that her book was for a mainstream audience. Ms. Cain told Defendants' agent Karen Hunter that she was against this idea and/or marketing approach. Defendants' agent Karen Hunter (who is African American) hotly told Ms. Cain that Simon & Schuster did not create their publishing company for people that looked like her. Ms. Cain asked Defendants' agent Karen Hunter (who is African American) what did she mean and Defendants' agent Karen Hunter told Ms. Cain that Simon & Schuster did not create their publishing company for black people. Ms. Cain hung up on Defendants' agent Karen Hunter.

32. On or around June 17, 2008, Ms. Cain sent an email to Carolyn Reidy who is the President of Simon & Schuster and to Louise Burke Vice President of Simon & Schuster requesting a confidential meeting regarding a disturbing matter involving Karen Hunter.

33. On or around June 17, 2008, Ms. Cain received an email from Louise Burke, Vice President of Simon & Schuster stating that she was directly responsible for Karen Hunter Publishing and was asked by the President, Carolyn Reidy to handle this matter.

34. On or around June 20, 2008 Ms. Cain received an email from Louise Burke, Vice President of Simon & Schuster confirming and agreeing to a telephone conference on June 23, 2008 at 2:00 p.m.

35. On or around June 23, 2008 at approximately 2:00 p.m. Ms. Cain told Louise Burke, Vice President of Simon & Schuster everything regarding Karen Hunter. Louise Burke, Vice President of Simon & Schuster told Ms. Cain that she would look into the matter and get back to her.

36. Between June 24, 2008 and July 15, 2008, Ms. Cain did not hear back from Louise Burke, Vice President of Simon & Schuster.

37. On or around July 16, 2008, Ms. Cain sent Louise Burke, Vice President of Simon & Schuster an email to touch basis as per our conversation on June 23, 2008.

38. On or around July 16, 2008, Ms. Cain received an email from Louise Burke, Vice President of Simon & Schuster stating that she was out of the office until the July 21, 2008 and to please contact Karen Fink.

39. On or around July 17, 2008, Ms. Cain received an email from Louise Burke, Vice President of Simon & Schuster stating she sent Ms. Cain an email a few weeks back (which she did not) and apologized to Ms. Cain for feeling that she was misled by Karen Hunter.

7

40. On or around March 2011, Ms. Cain spoke with someone at the CBS Corporation regarding her problem with Simon & Schuster and Defendants' agent Karen Hunter.

41. On or around March 2011, Ms. Cain received a telephone call from the Carolyn Reidy's (President of Simon & Schuster) assistant Pat Glynn stating that the CBS Corporation asked them to contact Ms. Cain regarding the matter.

42. Between April 2011 and June 2011, Simon & Schuster's attorney Elisa Rivlin contacted and spoke with two of Ms. Cain's representative which ended with Simon & Schuster's attorney Elisa Rivlin telling Ms. Cain's representative(s) that they did nothing wrong.

43. Ms. Cain objected to Defendants promoting her book just for an African American audience and Defendants refused to publish her book.

44. On information and belief, books classified as African American fiction are generally understood by the public to target a smaller audience than novels classified as general fiction.

45. On information and belief, less money goes into marketing and promoting books that are targeted only to an African American audience and is not typically purchased by a white audience.

46. On information and belief Defendants did not publish Ms. Cain's book because of her race and color.

47. On information and belief if Ms. Cain's book entitled *The Diary of a Mad Legal Secretary* was written by a white author, it would have been classified as general mainstream fiction.

48. Upon information and belief and as a result of Defendants' action, Ms. Cain has been deprived of the same opportunity as a white author to launch, publish and market her novel to a general mainstream audience.

49. Upon information and belief, Defendants knew that their actions violated Ms. Cain's Civil Rights.

50. Upon information and belief, Defendants' actions caused Ms. Cain significant economic loss, humiliation and emotional distress.

51. Upon information and belief, marketing Ms. Cain's novel to only an African American audience would mean that all of the characters in *The Diary of a Mad Legal Secretary* would have to be changed to African American.

52. Upon information and belief, Defendants knew that they were denying Ms. Cain the same opportunities as a white author and that Ms. Cain would have had limited success.

53. Upon information and belief, The Diary of a Mad Legal Secretary was written by a white author, Defendants would have already published her book and Ms. Cain would have already been enjoying the success of her novel.

## FIRST CAUSE OF ACTION
### Federal Civil Rights Act
### (42 U.S.C. §1981)

54. Ms. Cain repeats and re-alleges all allegations contained in paragraphs 1-53 of her complaint as though fully set forth herein.

55. Defendants' conduct as set forth above prevented Ms. Cain from enjoying the same right to make and enforce contracts as is enjoyed by white citizens under Section 1981 of the Civil Rights Act of 1866.

56. Ms. Cain has been injured by the Defendants discriminatory conduct and has suffered damages as a result.

57. The Defendants conduct was intentional, willful and made in disregard for the rights of others.

58. Accordingly, pursuant to U.S.C. §1981 Ms. Cain is entitled to actual damages, punitive damages, injunctive relief and reasonable attorneys' fees.

59. Defendants discriminated against Ms. Cain because of her race and color.

## SECOND CAUSE OF ACTION
### New York State Civil Rights Law §40(c)

60. Ms. Cain repeats and re-alleges all allegations contained in paragraphs 1-59 of her complaint as though fully set forth herein.

61. Defendants discriminated against Ms. Cain and violated her civil rights because of her race and color.

62. Defendants' conduct violated and continue to violate New York Civil Rights Law §40(c).

63. At the time of commencement of this action, a copy of this Complaint will be served upon the Attorney General, in accordance with New York Civil Rights Law §40(d).

## PRAYER FOR RELIEF

WHEREFORE, Ms. Cain prays for judgment against the Defendants as follows:

A. Declare that Defendants' actions constitute illegal race discrimination under 42 U.S.C. §1981 and New York Civil Rights Law 40(c).

B. Permanently enjoin the Defendants' from further violation of Ms. Cain's rights and not engage in any retaliation against Ms. Cain.

C. Order Defendants' to publish *The Diary of a Mad Legal Secretary* and provide sufficient marketing resources for the publication of *The Diary of a Mad Legal Secretary* to make Ms. Cain whole.

D. Award judgment for all past and future economic losses suffered or to be suffered by Ms. Cain in the amount of SEVENTY-FIVE MILLION DOLLARS ($75,000,000.00).

E.   Award judgment for compensatory damages to compensate Ms. Cain for the humiliation and emotional distress she suffered as a result of Defendants' shameful unlawful conduct in the amount of FIFTY MILLION DOLLARS ($50,000,000.00).

F.   Award a penalty of not less than ONE HUNDRED DOLLARS ($100.00) and not more than FIVE HUNDRED DOLLARS ($500.00) for each violation under New York Civil Rights Law §40(c) in accordance with New York Civil Rights Law §40(d).

G.   Award punitive damages in an amount sufficient to punish Defendants for their intentional violation of Ms. Cain's federally protected civil rights and deter Defendants from engaging in such unlawful conduct in the future.

H.   Award all costs and reasonable attorneys' fees.

I.   Grant such additional and further relief as this Court may deem just and appropriate.

Dated:  June 13, 2011
         New York, New York

INEZ CAIN
PRO SE

By *[signature]*
Inez Cain

Return Address:   Inez Cain
c/o Henry Hewes
STERN & HEWES
515 Madison Avenue, 22nd Floor
New York, New York 10022
(201) 776-1304

11