VEDDER PRICE P.C.
Laura Sack
Michael Goettig
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
*Attorneys for Defendant*
*SIMON & SCHUSTER, INC.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**INEZ CAIN a/k/a EVE HALLIBURTON,**

                    **Plaintiff,**

                  **-against-**

**SIMON & SCHUSTER, INC. and**
**KAREN HUNTER,**

                    **Defendants.**

---

**Case No. 11-CV-4460 (SAS)**

**ECF CASE**

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**DEFENDANT SIMON & SCHUSTER, INC.'S MOTION TO DISMISS THE**</u>
<u>**AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

RELEVANT ALLEGATIONS ................................................................................................. 1

PROCEDURAL BACKGROUND .......................................................................................... 4

ARGUMENT ......................................................................................................................... 5

I.  THE APPLICABLE MOTION TO DISMISS STANDARD ........................................... 5

II.  THE AMENDED COMPLAINT FAILS TO PLEAD A NEW YORK CITY
HUMAN RIGHTS LAW CLAIM ................................................................................. 5

    A.  Plaintiff's Claim Against S&S Is Not Covered by the NYCHRL ......................... 5

    B.  Plaintiff's Claim Under the NYCHRL Is Time-Barred ....................................... 7

III.  THE AMENDED COMPLAINT FAILS TO PLEAD A CLAIM SOUNDING IN
BREACH OF CONTRACT ........................................................................................... 8

    A.  The Amended Complaint Fails to Plead That the Parties Agreed to
Material Contractual Terms ................................................................................. 8

    B.  The Amended Complaint Fails to Plead That Plaintiff Accepted S&S's
Offer ................................................................................................................. 10

IV.  THE AMENDED COMPLAINT FAILS TO PLEAD A VIOLATION OF
SECTION 1981 ........................................................................................................... 11

    A.  The Amended Complaint Fails to Plead a Section 1981 Claim as a Matter
of Law ............................................................................................................. 12

    B.  The Amended Complaint Fails to Plead a Section 1981 Claim as a Matter
of Common Sense ............................................................................................. 14

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*,
  78 N.Y.2d 88, 571 N.Y.S.2d 686, 575 N.E.2d 104 (N.Y. 1991) ............................................... 9

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009) ...................................................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). ...................... 5, 9, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........... 5, 10

*Berman v. SUGO LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ....................................................... 8

*Bridgeforth v. Am. Educ. Servs.*, 412 Fed. App'x 433 (3d Cir. 2011) .................................... 13, 14

*Brisbane v. Milano*, No. 10-3470-cv, 2011 U.S. App. LEXIS 21256 (2d Cir. Oct. 19, 2011) ..... 13

*Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001) ............................................................ 13

*Burgin v. Toys-R-Us-Nytex, Inc.*,
  No. 97-CV-998E, 1999 U.S. Dist. LEXIS 10073 (W.D.N.Y. June 30, 1999) ........................ 12

*Carruthers v. Flaum*, 450 F. Supp. 2d 288 (S.D.N.Y. 2006) .......................................................... 8

*Collins v. Cohen Pontani Lieberman & Pavane*,
  No. 04-cv-8983, 2008 U.S. Dist. LEXIS 58047 (S.D.N.Y. July 30, 2008) .............................. 7

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ...................................................................................................... 8

*Fuji Photo Film USA, Inc. v. McNulty*, 669 F. Supp. 2d 405 (S.D.N.Y. 2009) ............................. 8

*General Building Contractors Ass'n v. Pennsylvania*,
  458 U.S. 375, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982) ......................................................... 12

*Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602 (S.D.N.Y. 2010) ..................................... 8, 9, 10

*Itakura v. Primavera Galleries, Inc.*,
  Index No. 08-cv-9027, 2009 U.S. Dist. LEXIS 55198 (S.D.N.Y. June 30, 2009) ............... 5, 10

*Johnson v. City of New York*, 669 F. Supp. 2d 444 (S.D.N.Y. 2009) .................................... 12, 13

## TABLE OF AUTHORITIES
(continued)

**Page**

*Johnson v. Rowley*, 569 F.3d 40 (2d Cir. 2009)......................................................... 5, 15

*Lastra v. Barnes & Noble Bookstore*
    No. 11 Civ. 2173, 2011 U.S. Dist. LEXIS 150112 (S.D.N.Y. Dec. 29, 2011)................... 13, 14

*Marraccini v. Bertelsmann Music Grp. Inc.,*
    221 A.D.2d 95, 644 N.Y.S.2d 875 (3d Dep't 1996) .................................................. 10

*NYS Club Ass'n v. NYC*, 487 U.S. 1 (1988) .................................................................. 7

*Papasan v. Allain,* 478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ................................ 5

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)....................................... 10

*Schultz v. Wilson*, 304 Fed. App'x 116 (3d Cir. 2008) .................................................. 14

*Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y. 1987) .................... 11

*Waldron v. Rotzler*, 862 F. Supp. 763 (N.D.N.Y. 1994)................................................. 12

*Weinstein Co. v. Smokewood Entm't Grp.*, 664 F. Supp. 2d 332 (S.D.N.Y. 2009) ...................... 11

*Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir.1994)........................................................ 12

## <u>Statutes</u>

Fed. R. Civ. P. 12(b)(6)............................................................................ 1, 5

N.Y.C. Admin. Code § 8-102(9)................................................................... 6

N.Y.C. Admin. Code § 8-502(d).................................................................. 7

42 U.S.C. § 1981............................................................................... *passim*

Defendant Simon & Schuster, Inc. ("S&S"), by its attorneys, Vedder Price P.C., respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint of Inez Cain ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6).  The Amended Complaint purports to assert three causes of action, each of which must be dismissed as a matter of law.  First, Plaintiff's New York City Human Rights Law ("NYCHRL") claim must be dismissed because the Amended Complaint fails to allege that S&S engaged in any of the unlawful discriminatory practices enumerated in the NYCHRL, and because Plaintiff's NYCHRL claim is time-barred.  Second, Plaintiff's breach of contract claim must be dismissed because the Amended Complaint does not allege that there was ever a valid and binding contract between the parties: the Amended Complaint alleges neither that the parties reached an agreement concerning the material elements of their alleged contract, nor that Plaintiff accepted the purported offer of publication extended to her.  Third, Plaintiff's claim pursuant to 42 U.S.C. § 1981 ("Section 1981") must be dismissed because the Amended Complaint fails to allege plausibly that S&S discriminated against Plaintiff on the basis of her race.  Accordingly, the Amended Complaint must be dismissed in its entirety for failure to state a claim upon which relief may be granted.

## RELEVANT ALLEGATIONS

For purposes of this motion, the vague, conclusory and contradictory allegations in the Amended Complaint are presented in the light most favorable to Plaintiff.  According to the Amended Complaint, Plaintiff is the author of a novel, *The Diary of A Mad Legal Secretary*, which she wrote under the pseudonym Eve Halliburton (the "Novel").  (Amended Complaint ("Am. Cplt.") ¶ 9.)  Plaintiff wrote the Novel in or around December 2006, and in or around March 2008, "[P]laintiff's friend" submitted the Novel to an unidentified individual at S&S to be considered for publication.  (Am. Cplt. ¶¶ 9-10.)  In March 2008, Plaintiff received an e-mail

from Karen Hunter ("Hunter"), whom it is alleged upon information and belief "is an agent/employee of S&S," in which Hunter allegedly expressed interest in "having the book published with S&S and a book tour."  (Am. Cplt. ¶¶ 8, 11.)  According to the Amended Complaint, Plaintiff and Hunter met in person for the first and only time in or around April 2008. (Am. Cplt. ¶ 13.)  The Amended Complaint alleges that, "[d]uring that meeting, Hunter on behalf of S&S offered [P]laintiff a $50,000 book advance," and discussed a "tentative" release date for the Novel.  (Am. Cplt. ¶ 14.)  The Amended Complaint does not allege that Plaintiff accepted Hunter's alleged offer, either at that April 2008 meeting or at any time thereafter.

On or around April 9 and 12, 2008, Hunter allegedly sent e-mails to Plaintiff concerning their meeting and offering editorial suggestions concerning the Novel.  (Am. Cplt. ¶¶ 15-16.)  On or around April 14, 2008, Plaintiff allegedly responded to Hunter's e-mails, and agreed with Hunter's editorial suggestions.  (Am. Cplt. ¶ 17.)

Between April 29 and May 1, 2008, Hunter allegedly represented to Plaintiff that S&S was "unable to meet its promise" to pay a $50,000 advance, and instead was reducing the amount of the advance to $10,000.  (Am. Cplt. ¶ 18.)  However, on or around May 6, 2008, Hunter allegedly informed Plaintiff that S&S was once again willing to offer her an advance of $50,000. (Am. Cplt. ¶ 19.)  According to the Amended Complaint, Hunter further informed Plaintiff that S&S's Business Affairs Department "was preparing the contract for execution." (*Id.*)

Allegedly, Plaintiff next spoke with Hunter on June 16, 2008.  (Am. Cplt. ¶ 20.)  During this conversation, Hunter allegedly informed Plaintiff that the Novel, "originally to be published for a mainstream audience, was going to be geared to a network of African American writers only."  (*Id.*)  Plaintiff disagreed with this marketing approach.  (*Id.*)  Hunter then allegedly informed Plaintiff that S&S "did not create a publishing company for people that looked like

her." (Am. Cplt. ¶ 21.)   When asked to elaborate, Hunter allegedly stated that S&S "did not create their publishing company for black people." (*Id.*)

At some unspecified time thereafter, Plaintiff allegedly "contacted Louise Burke [('Burke')] of S&S to inform her what Hunter told [P]laintiff regarding S&S's policies of not publishing authors who are African-American[.]" (Am. Cplt. ¶ 22.)   Burke allegedly stated that "she was responsible for Hunter and that Hunter had the authority from S&S to deny [P]laintiff's book publication consideration." (Am. Cplt. ¶ 23.)

The allegations in support of the First Cause of Action, titled "Violation of Plaintiff's Civil Rights," assert that Hunter's alleged proposal to market the Novel to an African American demographic constitutes intentional race-based discrimination, presumably in violation of Section 1981.[1]   (Am. Cplt. ¶ 25.)   Specifically, the Amended Complaint alleges that S&S and Hunter "violated [P]laintiff's civil rights in failing to consider the publication of [the Novel] to a mainstream audience as initially proposed." (Am. Cplt. ¶ 25.)   The Amended Complaint alleges, "[u]pon information and belief, when Hunter met [P]laintiff and discovered the color of her skin, Hunter on behalf of S&S altered the original agreement because of S&S's discriminatory practices." (Am. Cplt. ¶ 26.)   The remaining allegations in support of the First Cause of Action consist of legal arguments and conclusory assertions concerning Plaintiff's purported damages. (Am. Cplt. ¶¶ 27-31.)

The allegations in support of the Second Cause of Action (incorrectly denominated the "First Cause of Action"), captioned "Violation of the New York City Human Rights Law," assert

---

[1] While the First Cause of Action does not refer to any statute, the first paragraph of the Amended Complaint asserts that Plaintiff seeks damages "for violation of [her] civil rights pursuant to 42 U.S.C. §§ 1981 as well as violation of New York City Human Rights law." (Am. Cplt. ¶ 1.)   As the Second Cause of Action (incorrectly captioned the First Cause of Action) asserts a violation of the New York City Human Rights Law, it appears that the First Cause of Action is asserted pursuant to Section 1981.

that, by allegedly denying Plaintiff the "ability to publish the [Novel]" for purportedly race-based reasons, S&S violated the New York City Human Rights Law.  (Am. Cplt. ¶ 33-34.)   The remaining allegations in support of the Second Cause of Action consist of legal arguments and conclusory assertions concerning Plaintiff's purported damages.  (Am. Cplt. ¶¶ 35-38.)

The allegations in support of the Third Cause of Action, sounding in breach of contract, assert that Plaintiff and S&S agreed that S&S would publish the Novel and pay Plaintiff a $50,000 advance (Am. Cplt. ¶ 39); that Plaintiff performed all obligations required pursuant to her agreement with S&S (Am. Cplt. ¶ 40); and that S&S breached its alleged contract with Plaintiff by failing to publish the Novel or pay the advance (Am. Cplt. ¶ 41).

## PROCEDURAL BACKGROUND

Plaintiff initiated this action by filing a Complaint with the Court's *pro se* office on June 16, 2011.  Plaintiff's counsel filed a Notice of Appearance on November 22, 2011.

S&S filed an Answer to the Complaint on December 23, 2011.  On January 19, 2012, in accordance with the Court's individual practices, S&S requested in writing a conference with the Court to address its anticipated motion for judgment on the pleadings.  On January 25, 2012, Plaintiff's counsel advised the Court that, "If the Court is inclined to allow a motion for judgment on the pleadings, [P]laintiff will seek to cross-move to amend the [C]omplaint."

On January 30, 2012, the Court held a consolidated initial pretrial conference and pre-motion conference with counsel for S&S and Cain.[2]   In light of the fact that Plaintiff was proceeding *pro se* when this action was commenced, the Court granted Plaintiff's counsel leave to file an Amended Complaint by February 13, 2012.

Plaintiff's counsel filed the Amended Complaint on March 2, 2012.

---

[2] Russell Bloch of the Law Offices of Sanford F. Young, P.C. participated in the conference on Plaintiff's behalf.

## ARGUMENT

### I.  THE APPLICABLE MOTION TO DISMISS STANDARD

A complaint is appropriately dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  A plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).  A plaintiff's "bare averment that [s]he wants relief and is entitled to it" is not enough to withstand a motion to dismiss.  *Twombly*, 550 U.S. at 555 n.3 (citation and internal quotations omitted).  "Bald assertions and legal conclusions, or legal conclusions masquerading as facts need not be accepted as true by the Court."  *Itakura v. Primavera Galleries, Inc.*, Index No. 08-cv-9027, 2009 U.S. Dist. LEXIS 55198, at *4 (S.D.N.Y. June 30, 2009), *citing Twombly,* 127 S. Ct. at 1966.  If the allegations in the complaint do not "nudge[] [the plaintiff's] claims of invidious discrimination across the line from conceivable to plausible," the complaint should be dismissed.  *Iqbal*, 129 S. Ct. at 1951, *quoting Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Finally, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 127 S. Ct. at 1965*, quoting Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

### II.  THE AMENDED COMPLAINT FAILS TO PLEAD A NEW YORK CITY HUMAN RIGHTS LAW CLAIM

#### A.  Plaintiff's Claim Against S&S Is Not Covered by the NYCHRL

Plaintiff does not identify a specific provision of the NYCHRL that S&S allegedly violated.  Instead, she contends simply, "Plaintiff has been intentionally and willfully

discriminated against and has been denied by S&S and Hunter the ability to publish The Book due to her race in violation of The New York City Human Rights Law."  (Am. Cplt. ¶ 33.) Section 8-107 of the NYCHRL sets forth the scope of unlawful discriminatory practices prohibited by the NYCHRL, none of which are applicable to the allegations in the Amended Complaint.  Accordingly, Plaintiff's invocation of the NYCHRL is misplaced, and this claim must be dismissed.

Sections 8-107(1) and (3) of the NYCHRL proscribe discriminatory practices in the employment context.  The Amended Complaint does not allege that Plaintiff was ever S&S's employee, nor does it allege that Plaintiff even applied for employment with S&S.  Indeed, it is clear from the facts asserted in the Amended Complaint that this is not an employment discrimination action.  Accordingly, these sections of the NYCHRL are inapplicable.

Similarly, Plaintiff does not state a claim under Section 8-107(4) of the NYCHRL, because the Amended Complaint does not allege that S&S is a place of public accommodation as defined by Section 8-102(9).  S&S is described in a solitary paragraph of the Amended Complaint, in which it is merely identified as a Delaware corporation with its principal place of business in New York, New York.  (Am. Cplt. ¶ 7.)  Under the NYCHRL, a "place or provider of public accommodation" pertains to "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available."  N.Y.C. Admin. Code § 8-102(9).  As the United States Supreme Court has explained, the "public accommodation" component of the NYCHRL covers establishments such as "hotels, restaurants, retail stores, hospitals, laundries, theaters, parks, public conveyances, and public halls …."  *NYS*

*Club Ass'n v. NYC*, 487 U.S. 1, 5 (1988).  According to the New York City Commission on Human Rights  (the "NYCCHR"), the agency tasked with administrative enforcement of the NYCHRL, "some examples of public accommodations include stores, banks, medical or dental offices, government agencies, hair salons, health clubs, hospitals, hotels, libraries, theaters, restaurants, schools, and taxis."   *See* http://www.nyc.gov/html/cchr/html/public.html  (last accessed on April 17, 2012).  The NYCCHR further explains, "[a]nyone who provides goods or services to the general public is considered a public accommodation." *Id.*  All of these examples of public accommodations are businesses or entities which offer goods and services directly to the public, including by inviting the public at large to their premises.  By contrast, there is not a single allegation in the Amended Complaint to suggest that S&S is a bookstore, a library, or otherwise an entity that offers goods and services directly to the public.[3]  Hence, Plaintiff's NYCHRL claim must be dismissed for failure to state a claim.

## B.    Plaintiff's Claim Under the NYCHRL Is Time-Barred

Claims under the NYCHRL must be filed within three years of the alleged discrimination.  N.Y.C. Admin. Code § 8-502(d); *see also Collins v. Cohen Pontani Lieberman & Pavane*, No. 04-cv-8983, 2008 U.S. Dist. LEXIS 58047 (S.D.N.Y. July 30, 2008).  Here, Plaintiff claims that she was discriminated against sometime between April and July 2008.  (*See* Am. Cplt. ¶¶ 13-23.)  She did not file a claim under the NYCHRL until March 2012, nearly four years after the alleged events giving rise to this action.  Thus, even if Plaintiff's NYCHRL claim were otherwise viable, that claim must be dismissed because it was filed outside the three-year statute of limitations.

---

[3] The remaining practices that are prohibited by the NYCHRL are inapplicable on their face. The Amended Complaint does not allege, for example, that S&S has discriminated against Plaintiff in the provision of housing (Section 8-107(5)) or the issuance of a license or permit (Section 8-107(9)).

III.    **THE AMENDED COMPLAINT FAILS TO PLEAD A CLAIM SOUNDING IN BREACH OF CONTRACT**

To adequately plead a claim sounding in breach of contract, Plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation marks omitted).  To plead the existence of an enforceable contract, Plaintiff "must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract."  *Fuji Photo Film USA, Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009), *citing Berman v. SUGO LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).  "If the parties have not reached a final agreement on the fundamental terms of the deal, no contract has been formed."  *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 609 (S.D.N.Y. 2010), *quoting Carruthers v. Flaum*, 450 F. Supp. 2d 288, 309 (S.D.N.Y. 2006).  A breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal."  *Fuji Photo Film USA, Inc.*, 669 F. Supp. 2d at 412.

A.    **The Amended Complaint Fails to Plead That the Parties Agreed to Material Contractual Terms**

The allegations in the Amended Complaint demonstrate that Plaintiff and S&S *never* reached an agreement concerning the material terms of the alleged contract between them.  No contract exists in the absence of a "meeting of the minds" as to the material terms of the parties' alleged agreement.

> The doctrine of definiteness or certainty is well established in contract law.  In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to. . . . [I]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.

*Gutkowski*, 680 F. Supp. 2d at 609, *quoting 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 575 N.E.2d 104 (N.Y. 1991). Consequently, the Court should dismiss Plaintiff's breach of contract claim for failure to allege that the parties reached an agreement concerning the material terms of their alleged contract.

The Amended Complaint does not allege that the parties entered into a written contract memorializing the terms of their agreement. Instead, it alleges that, at Hunter's first meeting with Plaintiff, Hunter discussed with Plaintiff a $50,000 advance and a tentative release date for the Novel. *See* Am. Cplt. ¶ 14 ("During that [April 2008] meeting, Hunter on behalf of S&S offered plaintiff a $50,000 book advance. Hunter further discussed the tentative release date which would be Secretary's Day, September 2009") and Am. Cplt. ¶ 39 ("Plaintiff and S&S agreed that [the Novel] would be published by S&S and that [P]laintiff would receive a $50,000 advance for said publication"). Plaintiff apparently would have the Court believe that these two terms are sufficient to create an enforceable publishing contract, because the Amended Complaint is utterly silent as to any other material term of her alleged publishing contract with S&S. The Amended Complaint does not allege, for example, that Plaintiff and Hunter discussed (much less reached an agreement concerning) royalty rates, subsidiary rights, or even whether the Novel would be published in hardcover, paperback or e-book format. It is not plausible that S&S would commit to publishing the Novel without first reaching an agreement as to these (and other) material terms, and consequently, the Amended Complaint fails to state a claim sounding in breach of contract. *Iqbal*, 129 S. Ct. at 1949 (to withstand a motion to dismiss, a pleading must "state a claim to relief that is plausible on its face"). The fact that the Amended Complaint fails to allege that the parties agreed to the material terms of their alleged contract compels dismissal of Plaintiff's breach of contract claim. *Marraccini v. Bertelsmann Music Grp. Inc.,*

221 A.D.2d 95, 644 N.Y.S.2d 875, 877 (3d Dep't 1996), *quoted in Gutkowski*, 680 F. Supp. 2d at 612.

**B.      The Amended Complaint Fails to Plead That Plaintiff Accepted S&S's Offer**

Under New York law, "[m]utual assent is essential to the formation of a contract and a party cannot be held to have contracted if there was no assent or acceptance." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).   The Amended Complaint alleges that, at their first and only face-to-face meeting in April 2008, Hunter offered on behalf of S&S to publish the Novel and advance $50,000 to Plaintiff.  (Am. Cplt. ¶¶ 11, 14, 39.)  The Amended Complaint further alleges that each party understood that their agreement would be memorialized in a written contract.  *See* Am. Cplt. ¶¶ 19 ("Hunter also informed [P]laintiff that the Business Affairs Department of S&S was preparing the contract for execution"), 20 ("On or about June 16, 2008, [P]laintiff called Hunter on the telephone to inquire about the contract").  Conspicuously absent from the Amended Complaint is any allegation that Plaintiff agreed to the terms proposed by Hunter at their April 2008 meeting.  Absent such acceptance, Plaintiff fails to plead that she entered into a valid and binding contract with either Hunter or S&S, and her breach of contract claim must be dismissed.

Under *Twombly*, "legal conclusions masquerading as facts need not be accepted as true by the Court."  *Itakura*, 2009 U.S. Dist. LEXIS 55198, at *4, *citing Twombly*, 127 S. Ct. at 1966. Instead, the Court need credit only those well pleaded *factual* allegations in the light most favorable to Plaintiff.  *Id.*  Here, the Amended Complaint's factual allegations state that, when Hunter and Plaintiff met in person, Hunter discussed a "tentative" publication date and "offered" a $50,000 advance to Plaintiff.  (Am. Cplt. ¶ 14.)  These allegations are insufficient to plead the existence of a contract; instead, they merely allege that Hunter and Plaintiff were engaging in

preliminary discussions that may (or may not) have led to a formal agreement to publish the

Novel at some point in the future.

> When parties are negotiating an agreement, the default assumption
> is that enforceable legal rights do not arise.  It is fundamental to
> contract law that mere participation in negotiations and discussions
> does not create binding obligation, even if agreement is reached on
> all disputed terms. Courts must ensure that they avoid trapping
> parties in surprise contractual obligations that they never intended.
> For such reasons, there is a strong presumption against finding
> binding obligation in agreements which include open terms, call
> for future approvals and expressly anticipate future preparation and
> execution of contract documents.

*Weinstein Co. v. Smokewood Entm't Grp.*, 664 F. Supp. 2d 332, 346 (S.D.N.Y. 2009), *quoting*

*Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491, 499 (S.D.N.Y. 1987) (internal

quotation marks omitted).  According to the Amended Complaint, Plaintiff's "agreement" with

Hunter left significant material terms open (see Part III(A), *supra*), and "expressly anticipate[d]

future preparation and execution of contract documents." *Weinstein Co.*, 664 F. Supp. 2d at 346;

Am. Cplt. ¶¶ 19-20.   Moreover, even if the allegations in the Amended Complaint were

sufficient to establish that Hunter extended to Plaintiff a formal offer to publish the Novel, the

pleadings are bereft of any allegation that Plaintiff accepted that offer.

Accordingly, because the Amended Complaint fails to allege that Plaintiff accepted

S&S's offer of publication, the Court must dismiss Plaintiff's claim sounding in breach of

contract. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 184

(S.D.N.Y. 2009) (dismissing breach of contract claim because, *inter alia*, it was "bereft of any

facts indicating how plaintiffs accepted the [purported contractual] promises").

## IV.    THE AMENDED COMPLAINT FAILS TO PLEAD A VIOLATION OF SECTION 1981

The Amended Complaint, read in the light most favorable to Plaintiff, alleges that S&S

offered Plaintiff a $50,000 advance in exchange for publication rights with respect to the Novel

(Am. Cplt. ¶¶ 14, 18-19, 39), but that Plaintiff disagreed with S&S's proposal to market the Novel to "a network of African-American writers only" (Am. Cplt. ¶ 20). As a matter of law, these contentions do not state a claim under Section 1981. Furthermore, the factual allegations in the Amended Complaint fail as a matter of common sense and logic to allege that S&S discriminated against Plaintiff on the basis of her race. Accordingly, Plaintiff's Section 1981 claim should be dismissed.

### A.   The Amended Complaint Fails to Plead a Section 1981 Claim as a Matter of Law

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white persons." 42 U.S.C. § 1981(a). To adequately plead a claim under Section 1981, Plaintiff must allege facts which establish that S&S took action against her that was "racially motivated and purposefully discriminatory." *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 386, 102 S. Ct. 3141, 3148, 73 L. Ed. 2d 835 (1982). "It is well established that, to survive a motion to dismiss, a plaintiff bringing a Section 1981 claim must allege with specificity circumstances giving rise to a plausible inference of racially discriminatory intent." *Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009), *quoting Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) (internal quotations omitted). "In other words, a proper pleading under Section 1981 must set out facts that demonstrate that the plaintiff's race was the reason for the defendants' conduct." *Burgin v. Toys-R-Us-Nytex, Inc.*, No. 97-CV-998E, 1999 U.S. Dist. LEXIS 10073, at *4 (W.D.N.Y. June 30, 1999), *citing Waldron v. Rotzler*, 862 F. Supp. 763, 767 (N.D.N.Y. 1994).

The Amended Complaint fails to allege facts sufficient to infer that S&S was motivated by racial discrimination, and this fatal defect mandates dismissal of Plaintiff's Section 1981

claim.  *Johnson v. City of New York*, 669 F. Supp. 2d at 450.  The Amended Complaint does not allege that other similarly situated people (such as a white author who wrote a book comparable in quality to *Diary of a Mad Legal Secretary*) were treated any differently than Plaintiff.  *See Brisbane v. Milano*, No. 10-3470-cv, 2011 U.S. App. LEXIS 21256 (2d Cir. Oct. 19, 2011) ("after setting aside their conclusory assertions, their pleadings do not plausibly state that [plaintiffs] were similarly situated to other individuals who received different treatment").  Moreover, Hunter's solitary alleged comment that S&S "did not create their publishing company for black people" is insufficient to support the inference of discriminatory intent required to sustain a claim under Section 1981.[4]

In *Lastra v. Barnes & Noble Bookstore et al*, for example, the plaintiff alleged that he was discriminated against on the basis of his race in violation of Section 1981.  According to the complaint, a plain clothes security guard employed by Barnes & Noble followed the plaintiff, a Hispanic male, throughout the store.  The complaint alleged, in relevant part, that the security guard "followed [the plaintiff] Lastra, gave him menacing stares and called him a 'dirty spic.'" No. 11 Civ. 2173, 2011 U.S. Dist. LEXIS 150112, at *3 (S.D.N.Y. Dec. 29, 2011).  The court dismissed the Section 1981 claim, finding that the allegations in the complaint failed to state a claim under *Twombly*:

> The Complaint's only assertion evidencing racially discriminatory intent is Sterling's alleged use of a racial slur, a fact that is solely insufficient to establish discriminatory intent. *See Bridgeforth v. Am. Educ. Servs.*, 412 Fed. App'x 433, 435 (3d Cir. 2011)

---

[4] To the extent that the Amended Complaint purports to assert that S&S's alleged proposal to market the Novel to "African American writers only" (Am. Cplt. ¶ 20) constitutes race-based discrimination in violation of Section 1981, it is incorrect.  An allegation of racially targeted advertising and marketing does not state a cause of action under Section 1981.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799-800 (3d Cir. 2001) (dismissing claim pursuant to Rule 12(b)(6) and holding in relevant part that "discriminatory advertising is not actionable under Section 1981").

("Bridgeforth claimed that Dave used a racial slur in speaking to him on the telephone. Such an act is offensive, but standing alone it does not state a claim under § 1981"); *Schultz v. Wilson*, 304 Fed. App'x 116, 119-120 (3d Cir. 2008) (allegation that a member of a private club used a racial epithet to describe music being played at wedding reception was insufficient to establish intentional race discrimination to support a § 1981 action against the club, its member and state trooper who ended couple's wedding reception).

The *Lastra*, *Bridgeforth*[5] and *Schultz*[6] courts considered explicitly racist epithets, comments and conduct that were certainly no less offensive than the single comment allegedly made by Hunter. Nevertheless, all three courts concluded that such alleged conduct was insufficient to establish Section 1981's requisite discriminatory intent.[7] Likewise here, the allegations in the Amended Complaint fail to state adequately a cause of action under Section 1981.

**B.    The Amended Complaint Fails to Plead a
       Section 1981 Claim as a Matter of Common Sense**

According to the Amended Complaint, S&S, through Hunter, deprived Plaintiff of the right to enter into a contract for the publication of the Novel because of Plaintiff's race in violation of Section 1981.  But this assertion makes no sense in light of the relevant allegations in the Amended Complaint.

Plaintiff asks the Court to accept that S&S and Plaintiff had a valid and binding contract to publish the Novel, and that S&S unilaterally altered the terms and conditions of that contract when it learned that Plaintiff is African American.  This assertion cannot be reconciled with the specific factual allegations in the Amended Complaint.  According to those allegations, Hunter contacted Plaintiff via e-mail in March 2008 because she was "interested in having the book

---

[5] The plaintiff in *Bridgeforth* alleged that an employee of the corporate defendant "screamed at him and used a racial epithet during a phone call."  412 Fed. App'x at 434.

[6] The plaintiffs in *Schultz* alleged that the bar supervisor was overheard commenting that the plaintiffs were playing "n****r music" at their reception.  304 Fed. App'x at 119-20.

[7] The *Lastra* and *Bridgeforth* courts dismissed the complaints pursuant to Rule 12(b)(6); the *Schultz* court entered summary judgment in favor of the defendants.

published with S&S[.]"  (Am. Cplt. ¶ 11.)   Allegedly, Hunter and Plaintiff then corresponded over the following month, and eventually agreed to meet in person "to go over specifics regarding publication of the book."  (Am. Cplt. ¶ 12.)   It was at that first and only in-person meeting in April 2008 that Hunter allegedly offered Plaintiff a $50,000 advance, and discussed a tentative release date for the Novel.  (Am. Cplt. ¶ 14.)   However, this chronology cannot be reconciled with Plaintiff's claim that, "when Hunter met [P]laintiff and discovered the color of her skin, Hunter on behalf of S&S altered the original agreement because of S&S's discriminatory practices."   (Am. Cplt. ¶ 26, emphasis added.)   According to this allegation, asserted upon information and belief, S&S and Plaintiff already had a publishing agreement in place before Hunter met Plaintiff in person, and it was only after Hunter "discovered the color of her skin" that the publishing agreement was modified.   The facts alleged in the Amended Complaint cannot sustain the assertion that S&S had "policies of not publishing authors who are African-American" (Am. Cplt. ¶ 22) in light of the allegation that Hunter, on behalf of S&S, offered to publish the Novel and pay a $50,000 advance to Plaintiff *after* "discover[ing]" that Plaintiff was African American.   Thus, with respect to Plaintiff's Section 1981 claim, the Amended Complaint fails to "state a claim to relief that is plausible on its face," *Johnson*, 569 F.3d at 43-44, *quoting Iqbal*, 129 S. Ct. at 1949, and accordingly, the Court should dismiss Plaintiff's Section 1981 claim.

## **CONCLUSION**

For the foregoing reasons, defendant Simon & Schuster, Inc. respectfully urges the Court

to grant its Motion to Dismiss and dismiss the Amended Complaint in its entirety, and award to

S&S such other and further relief as the Court may deem just and proper.


Dated:  New York, New York.                    Respectfully submitted,
       April 18, 2012

                                                     VEDDER PRICE P.C.


                                           By:   */s/ Laura Sack*
                                               Laura Sack
                                             Michael Goettig
                                             1633 Broadway
                                             47th Floor
                                             New York, New York  10019
                                             +1 (212) 407-7700
                                             +1 (212) 407-7799

                                             *Attorneys for Defendant*
                                             *Simon & Schuster, Inc.*