**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ X

INEZ CAIN a/k/a EVE HALLIBURTON,

                Plaintiff,

        - against -

SIMON & SCHUSTER, INC. and
KAREN HUNTER,

                Defendants.

------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/3/12

**OPINION AND ORDER**

11 Civ. 4460 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       Inez Cain a/k/a Eve Halliburton brings discrimination and breach of contract claims against the publisher Simon & Schuster, Inc. ("S&S") and its alleged agent, Karen Hunter.  S&S and Hunter now move to dismiss the complaint. For the reasons set forth below, defendants' motions are granted in part and denied in part.

## II.    BACKGROUND[1]

       Cain is an African-American author who produced her first novel in

---

      [1]     All factual recitations are taken from the Complaint and assumed to be true for the purpose of adjudicating this motion.

2006 under the name Eve Halliburton.[2]  In early 2008, Cain's friend submitted the book to an individual at S&S for publication consideration.  In March 2008, Hunter emailed Cain expressing interest on behalf of S&S.  Around April 2008, Hunter and Cain met in person.  At this meeting, Hunter offered Cain a fifty thousand dollar book advance and discussed the tentative release date of the book.  Cain alleges that there was an agreement between herself and S&S as to the publication of the book and the fifty thousand dollar advance.[3]

Cain and Hunter exchanged further emails.  Hunter suggested some changes to the book, which Cain accepted.  Around the end of April or early May, Hunter — allegedly as an agent of S&S — indicated to Cain that S&S was having financial difficulties, would be unable "to meet its promise," and would have to reduce the advance to ten thousand dollars.  However, on or about May 6, 2008, Hunter informed Cain that S&S could pay the fifty thousand dollars and would "keep its original promise."  Hunter also informed Cain that the Business Affairs Department of S&S was preparing the contract for execution.  Cain never received the fifty thousand dollars.[4]

---

[2]     *See* Complaint ¶¶ 6, 9.

[3]     *See id.* ¶¶ 10, 11, 13, 14, 39.

[4]     *See id.* ¶¶ 15–19, 41.

On or about June 16, 2008, Cain called Hunter about the contract. Hunter informed Cain that the book was to be "geared to a network of African-American writers only."[5]  Cain disagreed with this approach.[6]  Hunter further informed Cain that "S&S 'did not create a publishing company for people that looked like her.'"[7]  When Cain inquired as to what Hunter meant, Hunter stated, "'S&S did not create their publishing company for black people.'"[8]  Cain then contacted Louise Burke of S&S to inform her of Cain's interaction with Hunter. Burke stated that "she was responsible for Hunter and that Hunter had the authority from S&S to deny [Cain's] book publication consideration."[9]

Cain alleges that Hunter, as an agent or employee of S&S, violated her civil rights in failing to consider targeting Cain's book to a general audience. She further alleges that Hunter altered the original agreement because of S&S's

---

[5]      *Id.* ¶ 20.

[6]      Cain adds in her Memorandum of Law the insufficiently pleaded allegation that S&S was going to publish the book using one of its "imprints," with which Hunter is associated.  *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem.") at 3.

[7]      *Id.* ¶ 21.

[8]      *Id.*

[9]      *Id.* ¶ 23.

discriminatory practices after discovering that Cain was African-American.[10]  As a result of Hunter's alleged discriminatory conduct as an agent or employee of S&S, Hunter pleads that she has been damaged and has suffered extreme mental anguish, emotional distress, humiliation, and embarrassment.[11]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true"[12] and "draw all reasonable inferences in the plaintiff's favor."[13]  On the other hand, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[14]  To survive a motion to dismiss, therefore, the allegations in the complaint must meet a

---

[10]      *See id.* ¶¶ 25–26.

[11]      *See id.* ¶¶ 27–29.

[12]      *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 , 678–679 (2009)).

[13]      *Ofori Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[14]      *Iqbal*, 556 U.S. at 678 (citation omitted).

4

standard of "plausibility."[15]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[17]

The plaintiff in support of her claim may allege "upon information and belief" facts that are "peculiarly within the possession and control of the defendant."[18]  Conversely, the plaintiff should not allege upon information and belief matters that are presumptively within her personal knowledge, unless she rebuts the presumption.[19]  Such matters include "'matters of public record or matters generally known in the community . . . inasmuch as everyone is held to be conversant with them.'"[20]

---

[15]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  *Accord Iqbal*, 556 U.S. at 678.

[16]     *Iqbal*, 556 U.S. at 678 (citation omitted).

[17]     *Id.* (quotation marks omitted).

[18]     *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

[19]     *See Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 177 n.2 (2d Cir. 2010).

[20]     *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224, at 300–01 (3d ed. 2004)).

### B.    Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[21]  Although "[t]he Court should freely give leave when justice so requires,"[22] it is "within the sound discretion of the district court to grant or deny leave to amend."[23]  When a motion to dismiss is granted, "[i]t is the usual practice . . . to allow leave to replead."[24]  Where plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[25]

## IV.    APPLICABLE LAW

### A.    Section 1981 of the Civil Rights Act

Section 1981 prohibits intentional race discrimination affecting "the

---

[21]    *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[22]    Fed. R. Civ. P. 15(a)(2).

[23]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted)

[24]    *Schindler v. French,* 232 Fed. App'x 17, 18 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)) (quotation marks omitted).

[25]    *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship."[26] "Such a contractual relationship need not already exist, because §

1981 protects the would-be contractor along with those who already have made

contracts."[27] "To establish a claim under 42 U.S.C. § 1981(a), a plaintiff must

show '(1) that [she] is a member of a racial minority; (2) an intent to discriminate

on the basis of race by the defendant; and (3) that the discrimination concerned one

or more of the activities enumerated in § 1981.'"[28] To survive a motion to dismiss,

a complaint must "must specifically allege the events claimed to constitute

intentional discrimination as well as circumstances giving rise to a plausible

inference of racially discriminatory intent."[29]

### B.    Breach of Contract

To make out a breach of contract claim under New York law, a

plaintiff must show "'(1) the existence of an agreement, (2) adequate performance

of the contract by the plaintiff, (3) breach of contract by the defendant, and (4)

---

[26]    42 U.S.C. § 1981(b).

[27]    *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

[28]    *Broich v. Incorporated Vill. of Southampton*, 462 Fed. App'x 39, 42 (2d Cir. 2012) (quoting *Lauture v. IBM*, 216 F.3d 258, 261 (2d Cir. 2000)).

[29]    *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994).

damages.'"[30]  A plaintiff alleging a breach of contract claim is required only to provide a defendant with a "short, plain notice" of the claims against it pursuant to Rule 8.[31]  However, a breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal."[32]

Under New York law, "'before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.'"[33]

> The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to . . . . [I]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.[34]

---

[30]   *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

[31]   *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867, 2006 WL 6217754, at *19 (S.D.N.Y. Mar. 31, 2006) (citing *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999)).

[32]   *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citation and quotation marks omitted).

[33]   *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 133 (2d Cir. 2005) (citation omitted) (quoting *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981)).

[34]   *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 609 (S.D.N.Y. 2010) (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91

However, "'[b]efore rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear.'"[35]

## C.   Agency

Under common law principles, the establishment of an agency relationship requires facts sufficient to demonstrate two factors:  "(1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent."[36]  In addition, "the principal must maintain control over key aspects of the undertaking."[37]  The control issue is not critical where a case concerns contractual liability — in that case, "if the agent had the authority to enter into the contract, the principal will be bound."[38]  Additionally, "an agent who enters a contract on behalf of a disclosed principal does not become a party to the

---

(1991)).  *Accord GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009).

[35]    *Bice v. Robb*, No. 07 Civ. 2214, 2012 WL 762168, at *5 (S.D.N.Y. Mar. 9, 2012) (quoting *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989)).

[36]    *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) (citations omitted) (citing Restatement (Second) of Agency §§ 15, 26).

[37]    *Id.* (citations omitted).

[38]    *Id.* (citing Restatement (Second) of Agency § 147).

9

contract, and thus incurs no liability if the contract is breached."[39]

## V.     DISCUSSION

### A.     Cain Has Properly Alleged that Hunter Is an Agent of S&S

Cain has alleged sufficient facts to demonstrate that Hunter is an agent of S&S. As this case concerns contractual liability, the control element is not significant. Cain pleads that Louise Burke of S&S stated that "she was responsible for Hunter" and that "Hunter had the authority from S&S to deny" consideration of Cain's book.[40] As such, Cain has adequately pled that S&S manifested intent to grant authority to Hunter to contract with Cain.[41] Cain has also pled that Hunter "decided on behalf of S&S" to market Cain's book to a smaller audience.[42] She also pleads that Hunter accepted the undertaking to contract with Hunter — Hunter

---

[39]    *Thomson Reuters (Property Tax Servs.) Inc. v. Thomas*, No. 10 Civ. 990, 2010 WL 5057459, at *2 (S.D.N.Y. Dec. 7, 2010) (citing *Seguros Banvenez. S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860 (2d Cir. 1985)).

[40]    Complaint ¶ 23.

[41]    *See Commercial Union Ins. Co.*, 347 F.3d at 462 ("[Where a principal] . . . represents that an agency relationship exists, that party becomes liable for transactions entered into by the putative agent."). *See also Sabilia v. Richmond*, No. 11 Civ. 739, 2011 WL 7091353, at *12 (S.D.N.Y. Oct. 26, 2011) (finding an agency relationship where the principal indicated that all communication should go through the putative agent).

[42]    Complaint ¶ 20.

10

offered Cain the advance "on behalf of S&S,"[43] and informed her later that S&S was having financial difficulties.[44]  These facts demonstrate agreement by the agent, Hunter.[45]  However, although Cain has sufficiently pled an agency relationship, she has not sufficiently pled any liability for breach of contract against Hunter, because Hunter functioned solely as a representative of S&S.[46]

### B.   Cain Has Failed to Plead a Definite Promise

Cain has not pled sufficient facts to demonstrate a definite promise was made.  The only well-pled facts in the Complaint describing a mutual agreement state the amount of the advance  — fifty thousand dollars — and that the book would be published by S&S.[47]  Hunter and Cain only discussed a tentative release date during their negotiations.[48]  Defendants correctly argue that these facts

---

[43]    *Id.* ¶ 14.

[44]    *See id.* ¶ 18.

[45]    *See Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 629 (S.D.N.Y. 2011) (citation omitted) (requiring the agent's "acceptance of the undertaking" authorized by the principal) (citing *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir. 2006)).

[46]    *See Thomson Reuters*, 2010 WL 5057459, at *2 (an agent is not liable for contractual liability if the principal is disclosed).

[47]    *See* Complaint ¶ 39.

[48]    *See id.* ¶ 14.

fail to allege material contractual terms.[49]  Cain counters only by restating the

allegations.[50]  This oral agreement is most notably missing a settled publication

date.[51]  As a result, Cain has failed to allege the existence of a contract, and has

thus failed to sufficiently allege a breach of contract claim against the principal

S&S.[52]

### C.   Cain Has Sufficiently Pled a Section 1981 Claim

Cain has properly alleged a Section 1981 claim against Hunter and

---

[49]    *See* Defendant Simon & Schuster's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 8.  *See also See Local 917, Int'l Bhd. of Teamsters v. N.L.R.B.*, 577 F.3d 70, 74 (2d Cir. 2009) ("[M]aterial terms can include 'subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production.'") (quoting 17A American Jurisprudence 2d Contracts § 190 (2004)); *Allen v. Robinson*, No. 10 Civ. 7118, 2011 WL 5022819, at *5 (S.D.N.Y. Oct. 19, 2011) ("Material terms of a contract that require definition include time, manner of performance and payment schedule.") (citation and quotation marks omitted).

[50]    *See* Pl. Mem. at 5.

[51]    *See Dorchester Pub. Co. v. Lanier*, No. 01 Civ. 8792, 2006 WL 4388035, at * 13 (S.D.N.Y. Mar. 19, 2006) (finding that under New York law, a specific time for performance is critical to the existence of a contract and holding that a contract was enforceable where it described the time at which a publication needed to be completed and accepted).  *Accord Shore v. Motorola, Inc.*, No. 98-4227, 2000 WL 51143 at *3 (N.D. Ill. Jan. 18, 2000) (citation omitted) (finding that a firm publication date is an essential term in a publication contract).

[52]    *Eternity Global Master Fund Ltd.*, 375 F.3d at 177 (citation omitted) (finding that the existence of a contract is necessary requirement for a breach of contract claim).

therefore, against S&S.[53]  Cain pleads that she is the member of a minority[54] and

that the alleged discrimination concerns the making of a contract.[55]  Cain also

properly pleads the second element of a section 1981 claim, discriminatory intent.

At the outset, Cain's pleading is undermined by the allegation that Hunter was

aware of Cain's race when she offered the fifty thousand dollar advance.[56]

However, the decision to market the book to a network of African-American

authors only is a circumstance that gives rise to an inference of discriminatory

intent.[57]  This circumstance combined with Hunter's statement, "S&S did not

create their publishing company for black people,"[58] — the event alleged to

constitute the discrimination —  is sufficient to plead an inference of

---

[53]     *Kiobel*, 621 F.3d at 194 (citations omitted) ("A principal is liable for
the acts of an agent acting within the scope of the agency.") (citing *Meyer v.
Holley*, 537 U.S. 280, 285 (2003)).

[54]     *See* Complaint ¶ 6.

[55]     *See id.* ¶ 19.  *See also* 42 U.S.C. § 1981(b).

[56]     *See* Complaint ¶ 14.

[57]     *See Yusuf*, 35 F.3d at 713 (finding that a plaintiff must specifically
plead a circumstance giving rise to the inference of discriminatory intent).  *See also
Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 357 (S.D.N.Y. 2010) ("Section
1981's right to make and enforce contracts is violated if a party refuses, on account
of race, to extend to someone the same opportunity to enter into contracts as he
extends to white offerees.") (citing *Runyon v. McCrary*, 427 U.S. 160, 170–71
(1976)).

[58]     Complaint ¶ 21.

discriminatory intent.[59]  As a result, Cain has stated a claim under Section 1981.

### D.   Attorney's Fees Are Denied Pursuant to Section 1927 of Title 28 of the United States Code

Defendants asked the Court to grant them attorney's fees because they requested that Cain voluntarily dismiss her New York City Human Rights Law claim in a pre-motion letter and the claim was not voluntarily dismissed until the opposition was filed.[60]  The remedy available under Section 1927 is extreme and reserved for counsel who multiply proceedings "unreasonably and vexatiously."[61] Defendants give no indication that Cain delayed in bad faith, and Cain ultimately did not continue to defend a frivolous claim. As such, defendants' request for attorney's fees is denied.[62]

---

[59]    *See TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 595 (S.D.N.Y. 2011) (a plaintiff can plead discriminatory intent by putting forth racially-motivated comments) (citing *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999).  *See also Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009) ("Typically, facts that support an inference of racial animus relate to long-term practices of discrimination, or to comments made by individuals suggesting that they harbor racial biases.") (citing *Yusuf*, 35 F.3d at 716).

[60]    *See* Def. Mem. at 7; Pl. Mem. at 5.

[61]    28 U.S.C. § 1927.

[62]    *See In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) ("Sanctions may be imposed, however, 'only when there is a finding of conduct constituting or akin to bad faith.'") (quoting *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)).  *See also THOIP v. Walt Disney Co.*, No. 08 Civ. 6823, 2009 WL 125074, at *4 (S.D.N.Y. Jan. 20, 2009) (finding bad faith and awarding attorney's fees when, after having been timely notified of a conflict of interest by

14

### E.      Leave to Amend

Leave to amend is granted with regard to the breach of contract claim as it is not insufficient as a matter of law.  Plaintiff may be able to plead additional facts to support the claim.[63]  However, if plaintiff is unable to do so, then she will be unable to file an amended complaint in compliance with her obligations under Rule 11.

## VI.    CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted in part and denied in part.  Any amended complaint must be filed within thirty (30) days of the date of this order.  The Clerk of the Court is directed to close these motions (Docket Nos. 27 and 28 ).  A conference is scheduled for August 13, 2012, at 4:30 p.m. in Courtroom 15C.

---

opposing counsel and the court, counsel delayed voluntary withdrawal until the filing date of a motion for disqualification, causing the opposing counsel to incur unnecessary costs).

[63]     *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where plaintiff cannot offer additional "substantive information" to cure a deficient pleading, repleading is futile).

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 3 , 2012

16

**-Appearances-**

**For Plaintiff:**

Brian Michael Dratch, Esq.
Franzlau Dratch, P.C.
233 Broadway, Suite 2701
New York, New York 10279
(212) 571-1808

**For Defendant Simon & Schuster:**

Laura Sack, Esq.
Michael John Goettig, Esq.
Vedder Price P.C. (NY)
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-6960
(212) 407-7781

**For Defendant Karen Hunter:**

Russell Marc Yankwitt, Esq.
Yankwitt & McGuire, LLP
140 Grand Street, Suite 501
White Plains, New York 10601
(914) 686-1500

17